P. Lavi

10 Auserehl Court Huntington, New York 11743, USA

Tel: (516)480-2000   Fax: (516)349-7906   E-Mail: plavi3621@gmail.com

7/12/2022

UNITED STATE DISTRIC COURT

EASTERN DISTRIC OF NEW YORK



PIERRE LAVI PLIANTIF ON BEHALF OF HIMSELF
AND TURBODYNAMICS CORPORATION

VIS

BANK NEGARA INDONESIA BRANCH
LOCATED AT 55 BRODWAY NY 1006 AND LAW
OFFICES OF ORLEE GOLDFELD 200 PARK AVE
SUIT 1700 NEW YORK NY 10116

PLANTIF PIERRE LAVI ON BEHALF OF HIMESEF AND PRESIDENT OF
TURBO DYNAMICS CORPORATION BASED ON ATTACHED VERIFABLE
DOCUMENTS BRING THIS CAUSE OF ACTION TO THIS HONORABLE
COURT.



NATURE OF ACTION

TURBO DYNAMICS CORPORATION HAS BEEN MANUFACTURING
COMPANY FOUNDED IN NY SINCE 1974 FOR MANUFACTURING GAS AND
JET ENGINES PARTS,

ON OR ABOUT JUNE 2011 BNI THROUGH J P MPORGAN CHASE BAND
OPENED A CONFIRMED LC OF CREDIT IN FAVOR OF OUR COMPANY
AMOUNTING TO $411600  AS PER ATTACED DOCUMENT AND AIRWAY BILL
DATED 11/15/2011 ALL SHIPMENT WAS SHIPPED TO JAKARTA INDONESIA.
UNDER BNI LC NO IM2SMG0006211,THE SHIPMENT WAS MADE ON
NOVEMBER 15 2011 BY AIRFREIGHT AS PER ATTACHED DOCUMENTS .

ON 6TH DECEMBER 2011 BANK NEGARA INDONESIA SENT AN EMAIL TO J P
MORGAN CHASE BANK THAT THEIR CLIENT HAD REFUSED TO ACCEPT
DUE TO DISCREPENCIES AND LATE PRESENTATION THEREFOR OUR
COMPANY WAS NOT PAID ,IN ORDER KNOW THE FACTS WHILE
COMMINICATING WITH BNI OFFICE IN NY CITY THEY FOUND OUT A
MISTAKE HAD BEEN MADE ASKING UNDERSIGNED TO GO TO JAKARTA
MEETING THEIR HEAD OFFICE SETTELING MATTER AMICABLY I LEFT

TICE FROM NY TO JAKARTA TRIED TO MEET BNI AGENTS IN THEIR HEAD OFFICE INITIALLY I MEET ONE OF THE EMPLYEES WHO GAVE ME HIS BUSINESS CARD WHICH TOOK IT BACK LATER ON.

I STAYED SEVERAL DAYS IN JAKARTA PAID $2000 TO ATTONEYS  MEET NINE OFFICERS OF BNI IN THEIR HEAD OFFICES NONE OF THEM GAVE ME THEIR NAMES BUSINESS CARD INCLUDING A LADY WHO CLAIMED TO BE BANK ATTORNEY SHE REFUSED TO WRITE HER NAME,
DURING MY STAY I FOUND OUT THAT THEIR CLIENT HAD BOROWED FOUR BILLION RUPPIAH TO OPEN LKC CLIENT HAD COMMITTED TO PAY BACK SUCH AMOUNT EXPIRY OF LC WHICH WAS EXTENED TILL MARCH 2012,I FOUND OUT VTHAT THERE WAS AGREEMENT BETWEEN BNI AND CLIENT THAT AFTER CRELESE OF OUR PARTS CLIENT MY IMMEDIATELY SHIP OUR PARTS TO IP  (INTENATIONAL POWER ) WHO WAS OBLIGED TO PAY ALL AMOUNTS DUE TO BNI ,FOR THIS REASON BNI SENT THEIR EMAIL DATEDD 6 TH DECEMBER 2011, BNI SECOND LARGEST BANK DEFRRAUDED THE LARGEST BANK IN USA BEING CHASE BANK BASED ON N
INFORMATION I HAVE RECEIVED FROM ANY ATTORNEY FRAUD AGAINST A US BANK IS NOT SUBJECT TO ANY LIMITATION OF TIME ESPECIALY WHEN I SUBMITTED PERSONALLY MY LETTER DATED DECEMBER 2019 IN JAKARTA TO PRESIDENT OF BNI AND RECEIVED RECEPT FROM ONE OH SUBORDINATED AS ATTACHED ,BASED ON ALL DOCUMENTS AS ATTACHED AND PROVIDED DURING TRIAL OF THIS CASE BNI HAD COMMITTED FRAUD AGAINST CHASE BANK AND UNDERSIGNED BEING GRAND LARCENY UNDER NYSLAW SEE PENAL LAW 155.05(2)(D),155.40
BNI FRAUDELENLY ENDORSED OUR BILLING DODUMENTS SPECIALLY OUR AIR WAY BILLDATED 11/15/2011 TO THEIR CLIENT PT GALAMA TO DEFRAUD OUR COMPANY .BNI OWES TDC AND UNDERRSIGNED AS PRESIDENBT OF TDC THE AMOUN T OF $411600 PLUS ANY AND ALL INTEREST SINCE DECEMBER 6 2011 PLUS CLOSING OF THEIR OFFICE IN NY CITY AND ANY ADDITIONAL FINES DECIDED BY THIS HONRABLE COURT.

RESPECTFULLY SUBMITTED
PIERRE LAVI ON BEHALF OF HIMSELF AND TURBO DYNAMICS CORPORATION .

PIERRE LAVI FOR AND ON BEHALF                           7/12/2022
TURBO DYNAMICS CORPOREATION
OF 10 AUSEREHL COURT HUNTINGTON
NY 11743


        VIS
BANK NEGARA INDONEZIA
55 BROADWAY NY 10006
TEL NO 2129434750 AND LAW OFFICES
ORLEE GOLDFELD  200 PARK AVE SUIT 1700
NY NY 10166



FOR THE KIND AND SPECTIAL ATTENTION HONORABLE PRESIDING JUDGE TURBO DYNAMICS CORPORATION REPRESENTED BY PIERRE LAVI PROSAY IS BRINGING THIS ACTION IN FROMT OF THIS HONRABLE COURT UNITED STATE DISTRIC COURT SOUTHERN DISTRICT OF NEW YORK INFORMING THAT BANK NEGARA INDONESIA HAS COMMITTED FRAUD ON UNITED STATE NY CHASE BANK WHICH IS NOT SUBJECT TO ANY STATUE OF LIMITATION.

THIS HONORABLE COURT HAS FULL AUTHORITY TO ISSUE THE PAYMENT OF ALL AMOUNT DUE TO UNDERSIGNED WHOM REPRESENT TURBO DYNAMICS IN THIS  MATTER HAD BEEN BROUGH TO NEWYORK FINANCIAL SERVICES ,INITALLY AS PER ATTACHED 6 PAGES
LETTER FROM ORLEE GOLDFELD ,AS WELL AS NY STATE DEPARTMENT OF
FINANCIS SERVICES LETTER DATED 7 TH AUGUST 2019 AS ATACHED,
WITH THE PERMISSION OF THE COURT I AM ATTACHING COPY OF OUR BILLOF LADING FOR SHIPMENT DATED 11/15/2011, BNI SAMARAG BRANCH A UNIT OOF BNI SECOND LARGEST BANK IN INDONESIA  AS PER ATTACHED DOCUMENT HAD ENDORSED OUR SHIIPPING DOCUMENTS SPOECIALLY OUR BILL OF LADING TO THEIR CLIENT PT GALAMATA IN SAMARANG ENBLING THEM TO CLEAR THE GOODS WHICH WE HAD SHIPPED 11/15/2011,BANK NEGARA INDONESIA A SEVRAL BILLION BANK ON 6 TH DECEMBER 2011 HAD SENT AN EMAIL TO J P MOPRGAN CHASE BANK THAT THEIR CLIENT HAD NOT ACCEPTED OUR SHIPPING DOCUMENTS WHILE SUCH DOCUMENTS WERE ENDORSED TO THEIR CUSTOMER PT GALAMATA OF FIFTH DECEMBER 2011 ENABLING THE CTOMER TO REALSE OUR PARTS SELLING IT TO INTERNATIONAL POWER

A GOVERMENTAL ORGANISATION DURING UNDERSIGNED TRIP IN 2018 I DID FOUND THAT THERE WAS AND AGREEMENT BETWEEN BNI AND PT GALAMATA THAT 120 DAYS AFTER PROVIDING FOUR BILLION RUPPIA EQUIVALENT TO $400000 PT GALAMATA MUST PAY BACK THE AMOUNT DUE
TO BNI ,THERE WAS ANOTHER UNDERSTANDING BETWEEN BNI AND PT GALAMATA THAT OUR PARTS MUST BE SENT AFTER CLEARING FROM CUSTOMS TO IP  (INTERNATIONAL POWER ) A GOVERNMENTAL ENTETY \AND ALL AMOUNT DUE TO PT GALAMATE MUST BE FIRST PAID TO BNI.

FOR THIS SPECIFIC WHICH I DID FOUND ONLY DURING MY STAY IN JAKARTA IN 2018 I FOULD SUCH CRIMIAL ACTS OF BNI .

WITH YOUR PERMISSION I AM ATTACHING HEREWITH ENCLOSED THE COPIES OF FOLLOWING DOCUMENTS .
1,TURBO DYNAMICS CORPORATION SHIPPING DOCUMENTS

2.THE COPIES OF OUR AIRWAYBILL AND ITS ENDORMENT BY BNI TO PT GALAMATE IN  SIGNED BY TWO OFFICERS OF BNI.

3.FRAUDLENT EMAIL DATED SIXTH DECEMBER 2011 TO CHASE BANK ( ALTHOUGH LETTER OF CREDIT WAS EXTENDED TILL END MARCH 2012)

4.LETTER DATED 24 APRIL 2019 FROM BNI LAW FIRM ORLE GOLDFELD TO MR JOHN SANSONE OF NY STATE DEPARTMENT OF FINANCIAL SERVICES .

5.LETTER DATED 7 AUGUST 2019FROM DEPARTMENT OF FINACIAL SERVICES TO UNDERSIGNED AT OUR PREVIOUS ADRESS.

6THE LETTER OF CREDIT WAS CONFIRMED BY J P MORGAN CHASE BANK AND WAS EXTENDED TILL END MARCH 2012.

ATTACHED OUR EMAIL DATED FEB3 2021 TO MRS ORLEEATTORNY OF BNI WHICH IS SELF EXPLANATORY ,DUE TO CRIMINAL ACTS OF BNI SECOND LARGEST BANK OF INDONESIA TURBO DYNAMICS CORPORATION PRACTICALLY WENT OUT OF BUSINESS AFTER 46 YEARS AS MANUFACTUIRING COMPANY IN NY WE COULD NOT PAY OUR REAL ESTATE TAXES ETC ,DECISION OF HONORABLE THIS COURT WILL BE ACCEPTABLE TO ALL PARTIES CONCERNED .
RESPECTFULLY SUBMITTED
PIERRE LAVI TDC NY
TDC



Jakarta, 04 January 2019

No            : INT /3 /0005
Attachments   : -
To            : **Turbo Dynamics Corporation**
                **150 Express Street, Plainview, New York 11803**

Your letter dated December 2, 2018

In Accordance to your letter, hereby we state several points :

1.  BNI has already sent a letter to your legal counsel on 27th of February 2018 with the letter number INT/10.2/1921, that delivers an explanation regarding letter of credit (L/C) between Turbo Dynamics Corporation and PT.Galatama (letter attached).

2.  Furthermore, for issues unrelated to the L/C documents are to be discussed with the buyers or other parties related. While for issues related to L/C documents can be discussed with JP Morgan Chase, New York as the beneficiary bank.

We hope this information could meet your needs, thank you for your kind attention and cooperation

International Divisions,

**dil Azhar**
Deputy Division Head

**PT Bank Negara Indonesia (Persero) Tbk
Kantor Pusat**
Jl. Jenderal Sudirman Kav. 1
Jakarta 10220, Indonesia
www.bni.co.id

# Turbo Dynamics Corporation

150 Express Street, Plainview, New York 11803
Tel: (516)349-8012  Fax: (516)349-7906  E-Mail: info@turbodyn.com
**F.A.A. Certified Repair Station No. QOMR742L**



*ISO 9001:2000*
*REGISTERED & IN COMPLIANCE*

**INVOICE Number: 01120**
Date: November 15, 2011

**ISSUING BANK:**
BANK NEGARA INDONESIA
(PERSERO) TBK
SEMARANG BRANCH, JL. MT HARYONO
NO. 16 SEMARANG 50122 INDONESIA

**APPLICANT:**
PT GALATAMA
JL. PANDANARAN NO. 58 PEKUNDEN
SEMARANG TENGAH, JAWA TENGAH
INDONESIA

**ISSUING BANK L/C NO.: IM2SMG0006211**

**ISSUING DATE: 111012**

**ADVISING BANK:**
JP MORGAN CHASE BANK N.A.
c/o JP MORGAN TREASURY SERVICES
GLOBAL TRADE SERVICES, 4th Floor
10420 Highland Manor Drive
Tampa, Florida 33610
**ADVISE NO.: INTE-239705**

**SHIPMENT:** Shipment has been effected by Sampai Express Service Agencies Hex, 01-01 Pei Fu Industrial Building, Singapore 536210 - T: + 65 62877250-51, F: +65 62889432 – Attn: Mr. Foo Heng.

**DESCRIPTION OF GOODS AND OR SERVICES:**
PART MAJOR INSPECTION PLTGHEX2 SUNYARAGI PT. INDONESIA POWER UBP SEMARANG
TYPE OF GOOD: PART TUBIN
QUALITY OF GOOD: BRAND NEW
HS CODE OF GOODS: 8411.82.00.00
ORIGIN OF GOODS: USA
VOLUME OF GOOD: ONE LOT
CONTRACT ORDER NO.: PO ESPA 110839
TOTAL AMOUNT: USD 411,600.00
INCOTERM 2010: EX-WORK NEW YORK AIRPORT

| ITEM NO. | QTY | DETAILED DESCRIPTION OF GOODS AND/OR SERVICES PER FIELD 45A | UNIT PRICE $ | AMOUNT $ |
|---|---|---|---|---|
| 1 | 1 set 120 pcs | First Stage Bucket P/N 733E831P029 c/w accessories | $63,500.00 | $63,500.00 |
| 2 | 1 set 90 pcs | Second Stage Bucket P/N 772E354P02 c/w accessories | $118,000.00 | $118,000.00 |
| 3 | 1 set | First Stage Nozzle Ass. P/N 733E470G10 c/w accessories | $75,000.00 | $75,000.00 |
| 4 | 1 set | Second Stage Nozzle Ass. P/N 812E521G001 c/w accessories | $110,000.00 | $110,000.00 |
| 5 | 1 set | Second Stage Shroud Segment P/N 678D533P001 c/w accessories | $22,000.00 | $22,000.00 |
| 6 | 1 set | First Stage Shroud Segment P/N 722C163P003 & 4 c/w accessories | $23,100.00 | $23,100.00 |
| TOTAL AMOUNT PORT OF DEPARTURE NEW YORK AIRPORT AIRPORT OF DESTINATION: SOEKARNO HATTA AIRPORT, JAKARTA INDONESIA FOUR HUNDRED ELEVEN THOUSAND SIX HUNDRED DOLLARS | | | | US $411,600.00 |

# Turbo Dynamic Corporation

150 Express Street, Plainview, New York 11803
Tel: (516)349-8012   Fax: (516)349-7906  E-Mail: info@turbodyn.com
**F.A.A. Certified Repair Station No. QOMR742L**



*ISO 9001:2000*

*REGISTERED & IN COMPLIANCE*

Date: November 15, 2011

**ISSUING BANK:**
BANK NEGARA INDONESIA
(PERSERO) TBK
SEMARANG BRANCH, JL. MT HARYONO
No. 16 SEMARANG 50122 INDONESIA

**ISSUING BANK L/C NO.: IM2SMG0006211**

**ADVISING BANK:**
JP MORGAN CHASE BANK N.A.
c/o JP MORGAN TREASURY SERVICES
GLOBAL TRADE SERVICES, 4th Floor
10420 Highland Manor Drive
Tampa, Florida 33610
**ADVISE NO.: INTE-239705**

**APPLICANT:**
PT GALATAMA
JL. PANDANARAN NO. 58 PEKUNDEN
SEMARANG TENGAH, JAWA TENGAH
INDONESIA

**ISSUING DATE: 111012**

**HS CODE OF GOODS: 8411.82.00.00**

**SHIPMENT:** Shipment has been effected by China Airlines and Sampai Express Service Agencies Hex, 01-01 Pei Fu Industrial Building, Singapore 536210 - T: + 65 62877250-51, F: +65 62889432 – Attn: Mr. Foo Heng.

## GUARANTEE LETTER BY
## TURBO DYNAMIC CORPORATION, AS MANUFACTURER

We hereby certify that tubin parts listed on our invoice no. 01120 will fit, form and function and are guaranteed for one year from installation date of such parts.

| Item no. | Qty | DETAILED description OF GOODS AND/OR SERVICES PER FIELD 45A |
|---|---|---|
| 1 | 1 set 120 pcs | First Stage Bucket P/N 733E831P029 c/w accessories |
| 2 | 1 set 90 pcs | Second Stage Bucket P/N 772E354P02 c/w accessories |
| 3 | 1 set | First Stage Nozzle Ass. P/N 733E470G10 c/w accessories |
| 4 | 1 set | Second Stage Nozzle Ass. P/N 812E521G001 c/w accessories |
| 5 | 1 set | Second Stage Shroud Segment P/N 678D533P001 c/w accessories |
| 6 | 1 set | First Stage Shroud Segment P/N 722C163P003 & 4 c/w accessories |

Mansour Lavi
Turbo Dynamic Corporation

# Turbo Dynamics Corporation

21 Overbrooke Lane, Glen Head, New Yrk 11545
Tel: (516)349-8012  Fax: (516)349-7906  E-Mail: info@turbodyn.com
**F.A.A. Certified Repair Station No. QOMR742L**



*ISO 9001:2008*

*REGISTERED & IN COMPLIANCE*

July 5, 2019

Mr. John Sansone
Financial Services Examiner 3
Consumer Assistance Unit
New York Department of Financial Services
One State Street
New York, NY 10004-1511

Re: CAU Complaint File No. BKC-2019-01297329
    Complaint against P.T. Bank Negara Indonesia (Persero) Tbk

Dear Mr. Sansone,

I would like to refer to your letter dated 3 May 2019 addressed to our attorney, Mr. Januzzi as well as letter dated 24 April 2019 from law offices of Orlee Goldfeld, attorneys of BNI in six pages.

The above six page letter is nothing but indeed hiding the criminal acts of BNI, whom this lady is actually representing. She has not brought to your attention that indeed on 6 December 2011 BNI fraudulently sent an email to JP Morgan Chase Bank in New York claiming that their customer, PT Galamata, has rejected our shipping documents although only during last year when I was in Jakarta I found that on 5 December 2011 our shipping documents were duly endorsed by BNI Samarang branch, provided to their customer, PT Galamata, enabling them to release our manufactured parts, delivering to Indonesian Power making sure that Indonesian Power will pay $730,000. amount which PT Galamata had charged Indonesian Power based on contract.

During my stay I found out that indeed for the establishment of $411,600. letter of credit, BNI Semarang branch had loaned to their customer, PT Galamata, the amount of four billion rupiah which is equal to about $411,600. I found as well that there was a contract between PT Galamata and BNI Semarang that latest 120 days from the date of establishment of letter of credit, such amount must be paid by PT Galamata to BNI Semarang branch. For this reason there was another agreement between Indonesian Power (ultimate end user of our parts) and BNI Semarang that the amount due to PT Galamata should be paid directly to BNI Semarang branch.

The lady in charge representing the bank has concealed or eventually did not know the above material facts. In order to show additional criminal acts of BNI, I kindly request you to know that indeed after our goods were released from the customs, were shipped to Indonesian Power, BNI Semarang has requested their customer, PT Galamta, to return our original airway bill in sending the same to JP Morgan Chase thus claiming that PT Galamata has rejected our shipping documents. In fact BNI has tried twice to lie and defraud not only our company but indeed JP Morgan Chase Bank.

We are a very proud NY manufacturing company since 1974. For similar misconduct your organization has penalized Societe Generale by 420 million dollars as fines, Standard Chartered Bank with 40 million dollars, Bank Mashraq with 40 million dollars as fines. In our opinion BNI as one of the largest banks in South East Asia must be fined for their criminal acts as decided by you and New York Department of Financial Services of New York so that from now on no foreign bank shall try to defraud any American organization. The criminal act of BNI has made sure that our company is practically out of business simply because we could not pay about $300,000. real estate taxes which we owed Town of Oyster Bay in New York.

Our minimum loss on this transaction is $411,600. which should have been paid to us in December 2011 plus respective interest until the amount is fully paid including but not limited to $900,000. which we were obliged to sell our property known as 150 Express Street, Plainview, NY 11803 on haste. It should be understood that there is no

statute of limitation in this transaction because I found the fraud committed to our company only during 2018 when I was in Jakarta in February as well as November 2018.

Moreover Ms. Orlee Goldfeld should never claim that BNI being a quasi-governmental organization has ever the right to cheat and defraud a NY corporation and lie to JP Morgan Chase, the largest bank in United States.

Please note that I talked with Mr. Kelly of your office in Garden City, he does agree with me that BNI must pay all the amount due and must be fined as outlined by your esteemed organization. We are sending a copy of this letter to law offices of Orlee Goldfeld so that from now on such office will be forthcoming, disclosing all the material facts as they are.

Please allow undersigned to meet you at your earliest convenience once you receive this letter covering respective documents.

Respectfully submitted,

Pierre Lavi
General Managing Partner
Turbo Dynamics Corporation

Att: Letter dated 25 April 2018 from Law offices of Karl Brodzansky to Mr. Jerry Phillips, Esq.,
    Email dated Dec. 6, 2011 from bank Negara Indonesia to JP Morgan Chase,
    Air Waybill no. JFK-3115-8407 3101158407 dated 15 November 2011, shipment of parts to Bank Negara
    Indonesia, Semarang Branch which was endorsed by two officers by the bank, namely Dyah Hesti
    Andaninvd and Juma Indka, delivered to the order of PT Galamata Semarang

cc: Law offices of Orlee Goldfeld
    171 East Ridgewood Ave. Suite 201
    Ridgewood, NJ 07450

# Turbo Dynamics Corporation

150 Express Street, Plainview, New York 11803, USA
Tel: (516)349-8012  Fax: (516)349-7906  E-Mail: info@turbodyn.com
F.A.A. Certified Repair Station No. QOMR742L

*ISO 9001:2008*

*REGISTERED & IN COMPLIANCE*

December 2, 2018

Top Urgent
Via Fax

For the Kind and Special Attention
President
BNI, Bank Negara Indonesia
Jakarta, Indonesia

Dear Sir,

On 6 December 2011, according to falsified email which JP Morgan Chase has received from your bank, the document which had been sent by Turbo Dynamics of New York had been rejected by BNI customer due to late presentation while your bank on 5 Dec 2011 had already signed and delivered our shipping documents to their customer to receive the four billion rupiah which they had loaned to their customer for establishment of such L/C. By this criminal act your bank helped the customer to release the goods, sell it to Indonesian Power so that the loan provided by BNI will be paid.

During February 2018 our delegate Pierre Lavi was sent to Jakarta to resolve this issue amicably. Your people including a lady who claimed she was the lawyer of BNI were so ashamed of the criminal act of your agents in Semarang branch that they did not even give their names to Mr. Pierre Lavi.

At this time our delegate Pierre Lavi under our direction is in Jakarta and we would like to resolve this matter amicably. I kindly request you to instruct immediately your legal department to meet Mr. Lavi whose mobile number is 082124789885 so that this matter will be resolved and Mr. Lavi will be fully paid as otherwise we shall have no option but to refer this matter not only to the banking department of NY State but indeed to criminal investigations of US Postal Services in Chicago Il. to punish your bank as they have used maliciously and criminally the US postal services through mail and wire fraud.

Please be assured that your branch will be closed and you are respectfully requested to do the needful immediately.
I am sending a copy of this to our Mr. Pierre Lavi for his immediate attention.
Sincerely,
William Johnson
Turbo Dynamics Corporation

We kindly request you urgently pass the the ~~attached~~ the for your attention of President of BNI as soon as possible

Receive original

3rd December 2018

Norliamoae

RECEIVED TIME:Dec 06 2011 12:21:08PM

3/10

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SWIFT MT734 Received as Below

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Sender's Address : BNINIDJAAXXX
BANK NEGARA INDONESIA 1946
PO BOX 1946 KB/JAK
JAKARTA KOTA,INDONESIA

:20: Sender's TRN : IM2SMG0006211

:21: Presenting Bank's Reference : INTE-239705

:32A: Date and Amount of Utilisation : 111201USD411600,

:72: Sender to Receiver Information :
WE REFUSED THE DOCS DUE TO DISCRE-
PANCIES NOTED AND REFER DISCREPAN-
CIES TO APPLICANT FOR ACCEPTANCE
UNDER UCP 600 ARTICLE 16C(III)B. WE
DO NOT STORE AND INSURE THE GOOD

:77J: Discrepancies : + LATE PRESENTATION

:77B: Disposal of Documents : /HOLD/IF DISCREP ARE WAIVED, WE
WILL RLSE DOCS WITHOUT NOTICE UN-
LESS IN INTERM YOU ADV OTHERWISE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PT. Bank Negara Indonesia (Persero) Tbk.
Outgoing SWIFT Message Report
Dated   : 06/12/11
Status : POSITIVE ACKNOWLEDGEMENT


Message Type            :   734
Basic Header            :   BNINIDJAXXX
Receiver                :   CHASUS33XXX
Application Header       :   {1:F01BNINIDJAAXXX0000000000}{2:I734CHASUS33XXXXN}{4:

------------ Beginning of Text----------

Sender's TRN

:20:IM2SMG0006211

Presenting Bank's Reference

:21:INTE-239705

Date and Amount of Utilisation

:32A:111201USD411600,

Sender to Receiver Information

:72:WE REFUSED THE DOCS DUE TO DISCRE-
PANCIES NOTED AND REFER DISCREPAN-
CIES TO APPLICANT FOR ACCEPTANCE
UNDER UCP 600 ARTICLE 16C(III)B. WE
DO NOT STORE AND INSURE THE GOOD

Discrepancies

:77J:+ LATE PRESENTATION

Disposal of Documents

:77B:/HOLD/IF DISCREP ARE WAIVED, WE
WILL RLSE DOCS WITHOUT NOTICE, UN-
LESS IN INTERM YOU ADV OTHERWISE
-}{1:F21BNINIDJAAXXX7051046323}{4:{177:1112061920}{451:0}}

---------- Ending Of Text ----------

Negara Indonesia (Persero) Tbk.
SWIFT Message Report
Type          :    799
eader         :    {1:F01BNINIDJAADLN710417507
tion Header   :    0799184512O124CHASUS33EXXX20313805051201250645N

r :     CHASUS33XXX
        JP MORGAN CHASE BANK - NEW YORK
        270 PARK AVENUE, NEW YORK
        NY 10017, USA
ceiver :
        BNINIDJAXXX
        BANK NEGARA INDONESIA - PT (PERSERO)
        10001 JAKARTA
        INDONESIA
Date of Receive : 25/01/12
---------- Beginning of Text----------
Transaction Reference Number
:20:INTE-239705
Related Reference
:21:IM2SMG0006211
Narative
:79:NARRATIVE:
OUR TRANSACTION NUMBER :INTE-239705-004
L/C NUMBER             :IM2SMG0006211
BILL AMOUNT            :USD 411,600.00
PLEASE BE INFORMED THAT WE HAD SENT THE DOCUMENTS
PERTAINING TO THE ABOVE REFERENCE FOR USD
411,600.00 TO YOUR GOOD BANK ON DEC 01, 2011
PLEASE RETURN THE ENTIRE SET OF DOCUMENT TO THE
BEL  7/MENTIONED ADDRESS.
ADDRESS: JPMORGAN CHASE BANK, N.A
C/O JPMORGAN TREASURY SERVICES
GLOBAL TRADE SERVICES, 4TH FLOOR
10420 HIGHLAND MANOR DRIVE
TAMPA, FL 33610
EMAIL: GTS.CLIENT.SERVICES(AT)JPMCHASE.COM
PLEASE QUOTE OUR REF INTE-239705-004, IN ALL
FUTURE COMMUNICATION RELATED TO THIS TRANSACTION.
YOUR SWIFT RESPONSE IN THIS REGARD WILL BE HIGHLY
APPRECIATED.
THANKS AND REGARDS,
EXPORT LC DEPT.
-}{5:{CHK:0AED09FF56F1}}

---------- Ending Of Text ----------

PENERIMA,    www.bni.co.id.

JFK-2115 8407
297-015...1150407

| Shipper's Name and Address | Shipper's Account Number |
|---|---|
| TURBO DYNAMIC CORPORATION<br>150 EXPRESS STREET<br>PLAINVIEW, NY 11803<br>11-267-3040<br>CONSIGNEED TO THE ORDER OF: | |

**Not Negotiable**
**Air Waybill**

Issued by TOLL GLOBAL FORWARDING.
50-15 183RD STREET
SPRINGFIELD GARDENS, NY 11413

Copies 1, 2 and 3 of this Air Waybill are originals and have the same validity.

3

| Consignee's Name and Address | Consignee's Account Number |
|---|---|
| PT. BANK NEGARA INDONESIA (PERSERO)<br>TBK, SEMARANG BRANCH INDONESIA<br>NOTIFY APPLICANT: PT. GALATAMA JL<br>PANDANARAN NO. 58 SEMARANG<br>ATTN: MR IMAM SYAFEI TELP +62811299857/MR AGUS RUSYADI TEL +62811164027 | |

It is agreed that the goods described herein are accepted in apparent good order and condition (except as noted) for carriage SUBJECT TO THE CONDITIONS OF CONTRACT ON THE REVERSE HEREOF. ALL GOODS MAY BE CARRIED BY ANY OTHER MEANS INCLUDING ROAD OR ANY OTHER CARRIER UNLESS SPECIFIC CONTRARY INSTRUCTIONS ARE GIVEN HEREON BY THE SHIPPER, AND SHIPPER AGREES THAT THE SHIPMENT MAY BE CARRIED VIA INTERMEDIATE STOPPING PLACES WHICH THE CARRIER DEEMS APPROPRIATE. THE SHIPPER'S ATTENTION IS DRAWN TO THE NOTICE CONCERNING CARRIER'S LIMITATION OF LIABILITY. Shipper may increase such limitation of liability by declaring a higher value for carriage and paying a supplemental charge if required.

| Issuing Carrier's Agent Name and City | Accounting Information |
|---|---|
| SAMPAI EXPRESS SERVICE AGENCIES<br>HEX 01-01 PEI FU INDUSTRIAL BUILDING<br>SINGAPORE 536210 PH(65)62877250 51<br>FAX(65)62889432 ATTN FOO HENG | FREIGHT COLLECT BY APPLICANT<br>L/C: IM2SMG0006211<br>DATE OF ISSUE<br>111012 |

Agent's IATA Code / Account No.

| Airport of Departure (Addr. of First Carrier) and Requested Routing | Reference Number | Optional Shipping Information |
|---|---|---|
| NEW YORK-JFK | | |

| To | By First Carrier Routing and Destination | to | by | to | by | Currency | CHGS Code | WT/VAL PPD COLL | Other PPD COLL | Declared Value for Carriage | Declared Value for Customs |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TPE | CI | SIN | CI | | | USD | CO | | | 411600.00 | 411600.00 |

| Airport of Destination | Flight/Date For Carrier Use Only | Flight/Date | Amount of Insurance | INSURANCE |
|---|---|---|---|---|
| SOEKARNO HATTA AIRPORT/1ST FL CI5321/15 XXX | | | | INSURANCE - If carrier offers insurance, and such insurance is requested in accordance with the conditions thereof, indicate amount to be insured in figures in box marked "Amount of Insurance". |

Handling Information

2ND FL CI5875/17 TO INDONESIA

These commodities, technology or software were exported from the United States in accordance with the Export Administration Regulations. Ultimate destination SINGAPORE

Diversion contrary to U.S. law prohibited.

SCI

| No. of Pieces RCP | Gross Weight | kg lb | Rate Class / Commodity Item No. | Chargeable Weight | Rate / Charge | Total | Nature and Quantity of Goods (incl. Dimensions or Volume) |
|---|---|---|---|---|---|---|---|
| 6 | 2300.0K<br>5070.6L | | Q | 2300.0 | 1.00 | 2300.00 | PART TUBIN<br><br>DIMS:1/76x76x18 in<br>1/75x75x18 in<br>1/28x31x19 in<br>1/40x44x20 in<br>1/40x28x4 in<br>1/40x51x11 in<br><br>VOL.WGHT.: 775.2 KG |
| | | | HS CODE OF GOODS: 8411.82.00.00 | | | | |
| 6 | 2300.0K | | | | | 2300.00 | 4.651 cbm |

AES X20111123700362

| Prepaid | Weight Charge 2300.00 | Collect | Other Charges |
|---|---|---|---|
| | Valuation Charge | | AE-FUEL    2415.00 A    AE-H/C       40.00 A<br>AE-TERMIA   345.00 A    AE-AES       30.00 A<br>OE-INS     1440.60 A    AE-PICKUP   575.00 A<br>AE-SECSC    230.00 A |
| | Tax | | |
| | Total Other Charges Due Agent 5075.60 | | Shipper certifies that the particulars on the face hereof are correct and that insofar as any part of the consignment contains dangerous goods such part is properly described by name and is in proper condition for carriage by air according to the applicable Dangerous Goods Regulations. |
| | Total Other Charges Due Carrier | | TOLL GLOBAL FORWARDING (USA) INC.<br>As the agent of TURBO DYNAMIC CORPORATION<br>ISABELLA MARAFIOTI<br>Signature of Shipper or his Agent |
| Total Prepaid | Total Collect 7375.60 | | JFK International Airport 11/15/2011<br>Authorized agent of the carrier CHINA<br>AIRLINES AND SAMPAI EXPRESS SERVICE AGENCIES |
| Currency Conversion Rates | CC Charges in Dest. Currency | | Executed on (date)    at (place)    Signature of Issuing Carrier or its Agent |
| For Carriers Use only at Destination | Charges at Destination | Total Collect Charges | |

(2868) PRINTED AND WAREHOUSED BY JFK OFFICE SUPERMARKET, INC. (877) JFK-FORMS   ORIGINAL 3 (FOR SHIPPER)

IATA

## NOTICE CONCERNING CARRIER'S LIMITATION OF LIABILITY

If the carriage involves an ultimate destination or stop in a country other than the country of departure, the Montreal Convention or the Warsaw Convention may be applicable to the liability of the Carrier in respect of loss of, damage or delay to cargo. Carrier's limitation of liability in accordance with those Conventions shall be as set forth in subparagraph 4 unless a higher value is declared.

## CONDITIONS OF CONTRACT

1. In this contract and the Notices appearing hereon:

CARRIER includes the air carrier issuing this air waybill and all carriers that carry or undertake to carry the cargo or perform any other services related to such carriage.

SPECIAL DRAWING RIGHT (SDR) is a Special Drawing Right as defined by the International Monetary Fund.

WARSAW CONVENTION means whichever of the following instruments is applicable to the contract of carriage:

the Convention for the Unification of Certain Rules Relating to International Carriage by Air, signed at Warsaw, 12 October 1929;

that Convention as amended at The Hague on 28 September 1955;

that Convention as amended at The Hague 1955 and by Montreal Protocol No. 1, 2, or 4 (1975) as the case may be.

MONTREAL CONVENTION means the Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on 28 May 1999.

2./2.1 Carriage is subject to the rules relating to liability established by the Warsaw Convention or the Montreal Convention unless such carriage is not "international carriage" as defined by the applicable Conventions.

2.2 To the extent not in conflict with the foregoing, carriage and other related services performed by each Carrier are subject to:

2.2.1 applicable laws and government regulations;

2.2.2 provisions contained in the air waybill, Carrier's conditions of carriage and related rules, regulations, and timetables (but not the times of departure and arrival stated therein) and applicable tariffs of such Carrier, which are made part hereof, and which may be inspected at any airports or other cargo sales offices from which it operates regular services. When carriage is to/from the USA, the shipper and the consignee are entitled, upon request, to receive a free copy of the Carrier's conditions of carriage. The Carrier's conditions of carriage include, but are not limited to:

2.2.2.1 limits on the Carrier's liability for loss, damage or delay of goods, including fragile or perishable goods;

2.2.2.2 claims restrictions, including time periods within which shippers or consignees must file a claim or bring an action against the Carrier for its acts or omissions, or those of its agents;

2.2.2.3 rights, if any, of the Carrier to change the terms of the contract;

2.2.2.4 rules about Carrier's right to refuse to carry;

2.2.2.5 rights of the Carrier and limitations concerning delay or failure to perform service, including schedule changes, substitution of alternate Carrier or aircraft and rerouting.

3. The agreed stopping places (which may be altered by Carrier in case of necessity) are those places, except the place of departure and place of destination, set forth on the face hereof or shown in Carrier's timetables as scheduled stopping places for the route. Carriage to be performed hereunder by several successive Carriers is regarded as a single operation.

4. For carriage to which the Montreal Convention does not apply, Carrier's liability limitation for cargo lost, damaged or delayed shall be 19 SDRs per kilogram unless a greater per kilogram monetary limit is provided in any applicable Convention or in Carrier's tariffs or general conditions of carriage.

5./5.1 Except when the Carrier has extended credit to the consignee without the written consent of the shipper, the shipper guarantees payment of all charges for the carriage due in accordance with Carrier's tariff, conditions of carriage and related regulations, applicable laws (including national laws implementing the Warsaw Convention and the Montreal Convention), government regulations, orders and requirements.

5.2 When no part of the consignment is delivered, a claim with respect to such consignment will be considered even though transportation charges thereon are unpaid.

DELIVER TO THE ORDER OF

PT GALATAMA
SEMARANG,
PT. BANK NEGARA INDONESIA (PERSERO) TBK
SEMARANG BRANCH

DYAH HESTI ANDARINI/D.132

when accepted for carriage, the Warsaw Convention and the Montreal Convention permit shipper to increase the limitation of liability by declaring a higher value for carriage and paying a supplemental charge if required.

6.2 In carriage to which neither the Warsaw Convention nor the Montreal Convention applies Carrier shall, in accordance with the procedures set forth in its general conditions of carriage and applicable tariffs, permit shipper to increase the limitation of liability by declaring a higher value for carriage and paying a supplemental charge if required.

7./7.1 In cases of loss of, damage or delay to part of the cargo, the weight to be taken into account in determining Carrier's limit of liability shall be only the weight of the package or packages concerned.

7.2 Notwithstanding any other provisions, for "foreign air transportation" as defined by the U.S. Transportation Code:

7.2.1 in the case of loss of, damage or delay to a shipment, the weight to be used in determining Carrier's limit of liability shall be the weight which is used to determine the charge for carriage of such shipment; and

7.2.2 in the case of loss of, damage or delay to a part of a shipment, the shipment weight in 7.2.1 shall be prorated to the packages covered by the same air waybill whose value is affected by the loss, damage or delay. The weight applicable in the case of loss or damage to one or more articles in a package shall be the weight of the entire package.

8. Any exclusion or limitation of liability applicable to Carrier shall apply to Carrier's agents, employees, and representatives and to any person whose aircraft or equipment is used by Carrier for carriage and such person's agents, employees and representatives.

9. Carrier undertakes to complete the carriage with reasonable dispatch. Where permitted by applicable laws, tariffs and government regulations, Carrier may use alternative carriers, aircraft or modes of transport without notice but with due regard to the interests of the shipper. Carrier is authorized by the shipper to select the routing and all intermediate stopping places that it deems appropriate or to change or deviate from the routing shown on the face hereof.

10. Receipt by the person entitled to delivery of the cargo without complaint shall be prima facie evidence that the cargo has been delivered in good condition and in accordance with the contract of carriage.

10.1 In the case of loss of, damage or delay to cargo a written complaint must be made to Carrier by the person entitled to delivery. Such complaint must be made:

10.1.1 in the case of damage to the cargo, immediately after discovery of the damage and at the latest within 14 days from the date of receipt of the cargo;

10.1.2 in the case of delay, within 21 days from the date on which the cargo was placed at the disposal of the person entitled to delivery.

10.1.3 in the case of non-delivery of the cargo, within 120 days from the date of issue of the air waybill, or if an air waybill has not been issued, within 120 days from the date of receipt of the cargo for transportation by the Carrier.

10.2 Such complaint may be made to the Carrier whose air waybill was used, or to the first Carrier or to the last Carrier or to the Carrier, which performed the carriage during which the loss, damage or delay took place.

10.3 Unless a written complaint is made within the time limits specified in 10.1 no action may be brought against Carrier.

10.4 Any rights to damages against Carrier shall be extinguished unless an action is brought within two years from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped.

11. Shipper shall comply with all applicable laws and government regulations of any country to or from which the cargo may be carried, including those relating to the packing, carriage or delivery of the cargo, and shall furnish such information and attach such documents to the air waybill as may be necessary to comply with such laws and regulations. Carrier is not liable to shipper and shipper shall indemnify Carrier for loss or expense due to shipper's failure to comply with this provision.

12. No agent, employee or representative of Carrier has authority to alter, modify or waive any provisions of this contract.

 **NEW YORK** STATE OF OPPORTUNITY. | **Department of Financial Services**

ANDREW M. CUOMO
Governor

LINDA A. LACEWELL
Superintendent

August 7, 2019

Mr. Pierre Lavi
Turbo Dynamics Corporation
21 Overbrook Lane
Glen Head, NY 11545

Re: Complaint File No. BKC-2019-01297329
    Complaint against P.T. Bank Negara Indonesia (Persero) Tbk (BNI)

Dear Mr. Lavi:

In order to further handle your complaint against (BNI) we require you to submit the following documentation by September 3, 2019:

1.  Please provide documentary evidence that BNI has funds that were purportedly sent by a non-contractual third-party, Indonesia Power Company, to BNI for payment for the goods you shipped to your vendor. Our review of the shipping contract shows that your vendor was responsible for directly paying BNI and not this non-contractual third party. As such, this request is extremely important for us to have to follow up with the bank with this evidence to support your claim that the bank was paid by this non-contractual third party and never remitted the funds to your account at JP Morgan Chase Bank, N.A.

2.  Please provide documentary evidence (such as a delivery confirmation receipt from the courier) to support the date on which the required documentation required by the line of credit, was actually received by BNI on, or before, November 29, 2011. The reason for this request is that BNI claims that it received the required documentation late on December 1, 2011, which is after the November 29th deadline and after the line of credit expired on November 30, 2011.

3.  Please provide the contact information for your company's contact person at JPMorgan Chase Bank, N.A. who is familiar with this 2011 trade issue.

Thank you for your cooperation.

Sincerely,
John Sansone
Financial Services Examiner 3, Consumer Assistance Unit
212-480-4692
212-480-4262 (Fax)

## LAW OFFICES OF ORLEE GOLDFELD

PHONE: (646) 342-0211
FAX: (201) 444-2866
ORLEE@GOLDFELDLEGAL.COM
WWW.GOLDFELDLEGAL.COM

NEW JERSEY OFFICE
171 EAST RIDGEWOOD AVENUE, SUITE 201
RIDGEWOOD, NEW JERSEY 07450
PLEASE REPLY ___✓___

NEW YORK OFFICE
200 PARK AVENUE, SUITE 1700
NEW YORK, NEW YORK 10166
PLEASE REPLY _____

April 23, 2019

**By FedEx**
Mr. John Sansone
Financial Services Examiner 3
Consumer Assistance Unit
New York Department of Financial Services
One State Street
New York, New York 10004-1511

Received
NYS Dept. of Financial Services

APR 2 4 2019

Consumer Assistance Unit

Re:   CAU Complaint File No. BKC-2019-01297329

Dear Mr. Sansone:

I am counsel to PT. Bank Negara Indonesia (Persero) Tbk. (the "Bank"). I am writing on behalf of the Bank in response to your letter dated April 1, 2019 and in response to the above-referenced complaint (the "Complaint"). I have reviewed the Complaint filed by Michael Jude Jannuzzi on behalf of his client Turbo Dynamics Corporation ("Turbo"). I have also reviewed the Bank's files with respect to this stale claim and can provide the following information. As requested, copies of relevant documents that support the Bank's position are provided herewith as exhibits to this letter.

### The Letter of Credit

On October 14, 2011, the Bank's Semarang Branch in Indonesia issued an irrevocable letter of credit (the "LC") number IM2SMG0006211 at the request of the applicant PT Galatama and for the benefit of Turbo in the amount of $411,600. The LC was issued by way of SWIFT message MT700. The LC provided that "DOCUMENTS TO BE PRESENTED WITHIN 14 DAYS AFTER AIRWAY BILL DATE BUT NOT LATER THAN CREDIT VALIDITY." The LC was valid until its expiry date of November 30, 2011. The beneficiary's bank was JPMorgan Chase ("JPM") (Ex. A).

On Oct. 20, 2011, JPM sent a SWIFT message MT799 requesting several amendments to the LC (Ex. B). On November 11, 2011, the Bank amended the LC by issuing SWIFT message MT707 (Ex. C).

On December 1, 2011, JPM sent a payment cover letter by courier attaching the original shipping documents related to the LC. As JPM noted in its cover letter, "ENCLOSED ARE THE ORIGINAL OF SHIPPING DOCUMENTS, WHICH WE ARE SENDING TO YOU ON AN APPROVAL BASIS AS THEY DO NOT STRICTLY COMPLY WITH CREDIT TERMS.

Mr. John Sansone
April 23, 2019
Page 2

THESE DOCUMENTS ARE TO BE RELEASED ONLY WHEN YOU AUTHORIZE US TO HONOR/NEGOTIATE UNDER THE LETTER OF CREDIT" (Ex. D). The enclosed documents included the Air Waybill, which was dated November 15, 2011. Therefore, under the terms of the LC, presentation was to be made within 14 days, or November 29, 2011, and before the expiry date of November 30, 2011.

The Bank received the original documents on December 6, 2011. The same day, the Bank sent SWIFT message MT734 to JPM stating: WE REFUSED THE DOCS DUE TO DISCREPANCIES NOTED AND REFER DISCREPANCIES TO APPLICANT FOR ACCEPTANCE UNDER UCP 600 ARTICLE 16C(III)B. WE DO NOT STORE AND INSURE THE GOODS. The discrepancy noted was "LATE PRESENTATION" (Ex. E).

Apparently, the applicant did not waive the discrepancies, because on January 25, 2012, JPM sent SWIFT message MT799 stating "PLEASE RETURN THE ENTIRE SET OF DOCUMENTS" to JPM (Ex. F).

On January 27, 2012, the Bank complied with JPM's request and returned the documents to JPM noting: WE RETURN YOUR DOCUMENTS AS PER YOUR INSTRUCTION ON YOUR MT 799 DT 101225 UNDER OUR REF IM2SMG0006211 (Ex. G). (Copies of the documents returned are annexed at Ex. D.)

Contrary to the insinuation in the Complaint, the Bank at no time turned over the shipping documents to the applicant, PT Galatama. Any issues concerning the underlying goods was a matter between Turbo as seller and PT Galatama as buyer.

### Communications with Turbo and Its Attorneys

On October 23, November 1, and November 11, 2013, Pierre Lavi of Turbo sent letters to the Bank's Semarang Branch and New York Agency with reference to the LC. In the latter two letters, Mr. Lavi requested payment of $226,600, rather than the full amount of the $411,600 LC. Turbo also provided a letter from JPM to Turbo dated February 27, 2012 showing the return of the original documents received from the Bank (Ex. H).

On January 16, 2015, the Bank's New York Agency held a meeting with Mr. Lavi and his attorney Michael Levine of Levine & Associates. The meeting concerned Turbo's claims that the buyer obtained access to the goods although payment was withheld. The New York Agency's personnel advised Turbo's representatives that, because this was a matter concerning the Semarang Branch, Turbo should retain Indonesian counsel and resolve the dispute there. The Bank's personnel also explained to Turbo's representatives that the Bank is entitled to protections pursuant to the Foreign Sovereign Immunities Act, *see* 28 U.S.C. § 1602 *et seq* (the "FSIA"). The attorney indicated that he was not familiar with the statute and its protections, but would look into it.

In early 2018, the Bank met with Indonesian counsel for Turbo in Jakarta, Indonesia. The Bank's personnel explained to Turbo's counsel that the documents received from the seller

Mr. John Sansone
April 23, 2019
Page 3

had discrepancies and that the Bank informed JPM that it would not affect payment due to the discrepancies, absent waiver from the applicant.

As a follow-up to that meeting, on February 27, 2018 the Bank sent a letter to Turbo's Indonesian counsel A.M. Oktarina (Ex. I). This letter is consistent with the Bank's prior communications. Because it is written in Bahasa Indonesia, I am providing you with a brief translation.[1] The first paragraph discusses the applicant, the LC, and the application of UCP600 (2007 edition). The second paragraph concerns the receipt of the documents, the discrepancy of late presentation, and the SWIFT message sent to JPM on Dec. 6, 2011. The third paragraph states that the issuing bank has the right to return the documents to the beneficiary's bank and that because the applicant refused to accept the discrepancies all documents were returned to January 27, 2012 based upon JPM's January 25, 2012 request. The fourth paragraph explained the various provisions of the UCP600 and that once the Bank identified the discrepancies, it was under no obligation to pay the LC. The fifth paragraph concerns UCP600 Article 5 that provides that "Banks deal with documents and not with goods...." The sixth paragraph states that all of this was already explained during the meeting at which the documents relating to the LC were discussed.

On May 9, 2018, the Bank's New York Agency received a letter from yet another attorney for Turbo demanding payment with interest on the LC (Ex. J). The letter was signed by Warren S. Landau, Of Counsel. The Bank referred the matter to the undersigned.

On May 11, 2018, I spoke by telephone with Mr. Landau. I told him that the Bank is majority owned by the Government of Indonesia and is therefore considered an "agency of a foreign state" under the FSIA. I also told him that several courts have recognized the Bank as a foreign state. *See, e.g., Hansen v. PT. Bank Negara Indonesia (Persero), Tbk.*, 601 F.3d 1059 (10th Cir. 2010); *Hanil Bank v. PT. Bank Negara Indonesia (Persero)*, 148 F.3d 127 (2d Cir. 1998); *NYSA-ILA Pension Trust Fund v. Garuda Indonesia*, 7 F.3d 35 (2d Cir. 1993).

Pursuant to the FSIA, the Bank is presumptively immune from the jurisdiction of the Courts of the United States and of the States. In order for a court to obtain jurisdiction over the Bank, a plaintiff must establish that an exception to the Bank's immunity as a foreign state applies. In a commercial context, there is a "commercial activity exception." Because the Bank's purported wrongful dishonor of the LC all occurred overseas, a plaintiff would have to establish that the Bank's overseas activities "caused a direct effect" in the United States. *See* 28 U.S.C. § 1605(a)(2); *see, e.g., Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992).

I told Mr. Landau about the FSIA provisions and that several courts have held that a financial loss to a United States plaintiff does not constitute a "direct effect." I noted that in addition to the FSIA issue, it was my opinion that Turbo had a statute of limitations problem, having then been 7 years since the purported wrongful dishonor of the LC. In New York, a claim concerning payment under a letter of credit is akin to a breach of contract claim and must be brought within six years. *See* CPLR 213(2); *see also* NY Uniform Commercial Code § 5-115 ("An action to enforce a right or obligation arising under this article must be commenced within

---

[1]   Please advise if you require a formal translation.

Mr. John Sansone
April 23, 2019
Page 4

one year after the expiration date of the relevant letter of credit or one year after the cause of action accrues, whichever occurs later."). Mr. Landau seemed to agree that his client may have a statute of limitations problem, but he believed that he was okay under the FSIA and that he could establish a "direct effect."

On July 16, 2018, I received a follow-up call from Mr. Landau. He told me that he had received some information that he wanted to send to me. He indicated that the information would take care of both the statute of limitations and FSIA issues. I provided him with my e-mail address and asked him to send me whatever materials he had. I never heard back.

On December 3, 2018, the Bank's Head Office received the December 2, 2018 letter from Turbo that was attached to the Complaint. Not only does this letter misstate the underlying facts, it disparagingly claims that the Bank acted "criminally" and threatens the Bank that this matter will be referred for a "criminal investigation by the US Postal Service," "to punish the bank," and that the Bank's "branch will be closed."

On January 4, 2019, the Bank's International Division responded to the December 2, 2018 letter (Ex. K) by referring to the February 27, 2018 letter (Ex. I) and repeating that any issues concerning the goods are a matter between the buyer and seller, while issues concerning the documents are to be discussed with JPM as the beneficiary bank.

The Bank then received your letter requesting a response to Turbo's Complaint by its latest attorney, the fourth attorney for Turbo thus far.

**Uniform Customs and Practice for Documentary Credits (UCP600) (2007 Revision)**

The UCP600 is a set of rules published by the International Chamber of Commerce that is commonly applicable in international letters of credit and was made applicable to the LC at issue herein (Ex. A). As set forth in its Article 1, UCP600 "are rules that apply to any documentary credit ... when the text of the credit expressly indicates that it is subject to these rules. They are binding of all parties thereto unless expressly modified or excluded by the credit."

Article 4 of UCP600 is entitled "Credits v. Contracts" and provides in part:

A credit by its nature is a separate transaction from the sale or other contract on which it may be based. Banks are in no way concerned with or bound by such contract, even if any reference whatsoever to it is included in the credit. Consequently, the undertaking of a bank to honour, to negotiate or to fulfill any other obligation under the credit is not subject to claims or defences by the applicant resulting from its relationships with the issuing bank or the beneficiary.

A beneficiary can in no case avail itself of the contractual relationship existing between banks or between the applicant and the issuing bank.

Mr. John Sansone
April 23, 2019
Page 5

Accordingly, the contractual relationship in a letter of credit is between the issuing bank (here, the Bank) and the beneficiary bank (JPM).

Article 6 of the UCP600 provides that "a presentation by or on behalf of the beneficiary must be made on or before the expiry date." Here it was not (Ex. D).

Article 16 concerns "Discrepant Documents, Waiver and Notice" and is highly relevant to the instant Complaint. Article 16(b) provides that "When ... the issuing bank determines that a presentation does not comply, it may refuse to honour or negotiate." That is exactly what the Bank did (Ex. E).

Article 16(c) provides that: "When ... the issuing bank decides to refuse to honour or negotiate, it must give a single notice to that effect to the presenter. The notice must state:

(i)     That the bank is refusing to honour or negotiate; and
(ii)    Each discrepancy in respect of which the bank refuses to honour or negotiate; and
(iii)
    a.  that the bank is holding the documents pending further instructions from the presenter; or
    b.  that the issuing bank is holding the documents until it receives a waiver from the applicant and agrees to accept it, or receives further instructions from the presenter prior to agreeing to accept a waiver; or
    c.  that the bank is returning the documents; or
    d.  that the bank is acting in accordance with instructions previously received from the presenter.

The Bank fully complied with subsections (i), (ii) and (iii)(b) of Article 16(c) (Ex. E).

Article 16(d) provides that: "The notice required in sub-article 16(c) must be given by telecommunication or, if that is not possible, by other expeditious means no later than the close of the fifth banking day following the day of presentation." The Bank provided its notice on the very day it received the documents (Ex. E).

Article 16(e) provides that: "[T]he issuing bank may, after providing notice required by sub-article 16(c)(iii)(a) or (b), return the documents to the presenter at any time." The Bank returned the original documents to JPM at its request on January 27, 2012 (Ex. G).

### The Bank's Practices and Policies

As set forth herein, the Bank has fully, completely, and timely complied with the rules set forth in UCP600 by advising the beneficiary bank of the discrepancy and returning the documents to the beneficiary's bank, JPM, at its request. The Bank has also repeatedly discussed Turbo's claims with its representatives and attorneys. Whatever occurred to the underlying goods is not the responsibility or concern of the Bank, and based upon the 2013 letter from Pierre Lavi, it appears that there may have been some negotiations between Turbo and PT Galatama (Ex. H).

Mr. John Sansone
April 23, 2019
Page 6

Had Turbo wished to raise a legal claim with respect to the LC either in Indonesia or the United States, it certainly had the opportunity to do so within the statute of limitations. Turbo has retained at least four (4) different counsel to represent it with respect its issues with the Bank. Turbo brought no such legal action. Instead, it sent the Complaint to the Department of Financial Services in an apparent last-ditch effort to harass the Bank and to sully its reputation.

The Bank respectfully submits that this Complaint should go no further, as the information provided herein, along with the accompanying documentation, is dispositive. However, should the DFS have any questions or request any additional information, the Bank stands ready to respond.

Sincerely,

Orlee Goldfeld

Cc:    Michael Jude Jannuzzi, Esq.
       Law Office of Michael Jude Jannuzzi
       775 Park Avenue, Suite 215-2
       Huntington, New York 11743

       PT. Bank Negara Indonesia (Persero) Tbk.

*Law Offices of*

# KARL BRODZANSKY

585 Stewart Avenue
Suite 730
Garden City, New York 11530

Tel:    (516) 248-2727
Fax:    (516) 248-6929
Email:  kblawny5@aol.com
Web:    www.kb-lawyer.com

<u>SUFFOLK OFFICE</u>
445 Broadhollow Road
Suite 25
Melville, New York 11747

Admitted:    New York
             Florida
      CERTIFIED MAIL, RRR

April 30, 2018

Jerry Phillips, Esq.
Bank Negara Indonesia
One Exchange Plaza, Fifth Floor
New York, NY 10006

> Re:    Demand for Payment Under Letter of Credit
>        No. IM2SMG0006211 and Bank Negara
>        Indonesia Fraud
>        Amount at Issue:    $411,600 US Dollars,
>                            plus interest from early
>                            2012

Dear Mr. Phillips:

This office now represents Turbo Dynamics Corporation ("TDC"), the beneficiary of the above-referenced letter of credit. We have taken over the representation of TDC from Levine & Associates.

As you are aware, TDC is owed the sum of $411,600, with interest from 2012, in connection with a sale to P.T. Galamata that was secured by the above-referenced letter of credit. TDC has been attempting to collect the sum due for quite some time. Although claim was timely made on the letter of credit, long before its expiration, Bank Negara Indonesia ("BNI") has met TDC's repeated demands with a series of excuses, untrue statements, and inconsistent rationalizations for failure to pay. From the pertinent documents, such as the shipping documents pertaining to the goods that were sold and letters BNI has sent to TDC, it is undeniable that BNI has acted in bad faith. In connection with the transaction, it has also committed a fraud that could constitute grand larceny under NYS law, <u>see</u> Penal Law §§155.05(2)(d), 155.40. Specifically, from the outset, BNI plainly intended to dishonor the subject letter of credit and it tried to hide the fact that, on about December 5, 2011, it actually endorsed the airway bill and other pertinent shipping documents and delivered them to purchaser P.T. Galamata. This confirmed that the goods sold by TDC were in good order and enabled P.T. Galamata to obtain possession of the goods. P.T. Galamata has retained the goods

ever since; it never rejected the goods or sought to return them. Although BNI has claimed that the shipping documents were rejected by P.T. Galamata and returned to Chase, P.T. Galamata did not reject the goods sold or the shipping documents. Rather, after P.T. Galamata used the shipping documents to obtain the goods sold, BNI returned the documents nearly two months after they were tendered to it. BNI seems to have used the proceeds secured by the letter of credit to repay money owed to it by P.T. Galamata, instead of using the letter of credit for the purpose reflected by the transaction, namely as payment for the goods.

In January 2015, representatives of TDC met with you and BNI representatives. Although you promised to investigate the matter with the BNI home office, there has been no progress since then and no payment whatsoever has been made to TDC. Mr. Pierre Lavi was in Indonesia in February 2018, and, while there, he learned of the facts showing that BNI never intended to make payment pursuant to the subject letter of credit. Mr. Lavi met three times with BNI representatives at the Jakarta branch, but they provided no useful information and, in fact, they shamefully refused to provide their names. TDC has been more than patient in seeking to work the matter out with BNI. It does not appear that TDC's patience has been or will be fruitful.

As a result, TDC has directed us to demand that payment of the amount due ($411,600 US Dollars, plus interest from 2012), must be made within seven (7) business days from the date on which you receive this letter. If that does not happen, TDC is ready to file suit to recover the principal balance due ($411,600 US Dollars), together with interest provided by law, counsel fees, and exemplary damages if and as permitted. TDC has also asked that, since BNI does business in NYS, we file a regulatory complaint against BNI with the NYS Department of Financial Services.

Should you wish to discuss this further, please call me or Karl Brodzansky at the telephone number set forth above.

Very truly yours,

Warren S. Landau
Of Counsel on the Case to Karl Brodzansky

WL:lsw

# Turbo Dynamics Corporation

150 Express Street, Plainview, New York 11803, USA
Tel: (516)349-8012   Fax: (516)349-7906   E-Mail: info@turbodyn.com
F.A.A. Certified Repair Station No. QOMR742L

*ISO 9001:2008*

*REGISTERED & IN COMPLIANCE*

December 2, 2018

Top Urgent
Via Fax

For the Kind and Special Attention
President
BNI, Bank Negara Indonesia
Jakarta, Indonesia

Dear Sir,

On 6 December 2011, according to falsified email which JP Morgan Chase has received from your bank, the document which had been sent by Turbo Dynamics of New York had been rejected by BNI customer due to late presentation  while your bank on 5 Dec 2011 had already signed and delivered our shipping documents to their customer to receive the four billion rupiah which they had loaned to their customer for establishment of such L/C. By this criminal act your bank helped the customer to release the goods, sell it to Indonesian Power so that the loan provided by BNI will be paid.

During February 2018 our delegate Pierre Lavi was sent to Jakarta to resolve this issue amicably. Your people including a lady who claimed she was the lawyer of BNI were so ashamed of the criminal act of your agents in Semarang branch that they did not even give their names to Mr. Pierre Lavi.

At this time our delegate Pierre Lavi under our direction is in Jakarta and we would like to resolve this matter amicably. I kindly request you to instruct immediately your legal department to meet Mr. Lavi whose mobile number is 082124789885 so that this matter will be resolved and Mr. Lavi will be fully paid as otherwise we shall have no option but to refer this matter not only to the banking department of NY State but indeed to criminal investigations of US Postal Services in Chicago Il. to punish your bank as they have used maliciously and criminally the US postal services through mail and wire fraud.

Please be assured that your branch will be closed and you are respectfully requested to do the needful immediately.
I am sending a copy of this to our Mr. Pierre Lavi for his immediate attention.
Sincerely,
William Johnson
Turbo Dynamics Corporation

We kindly request you urgently pass the the ~~attached~~ this for your attention of President of BNI as soon as possible

Receive original

3st December 2018

William

# Turbo Dynamics Corporation

21 Overbrooke Lane, Glen Head, New Yrk 11545
Tel: (516)349-8012  Fax: (516)349-7906  E-Mail: info@turbodyn.com
**F.A.A. Certified Repair Station No. QOMR742L**



*ISO 9001:2008*

*REGISTERED & IN COMPLIANCE*

July 5, 2019

Mr. John Sansone
Financial Services Examiner 3
Consumer Assistance Unit
New York Department of Financial Services
One State Street
New York, NY 10004-1511

Re: CAU Complaint File No. BKC-2019-01297329
    Complaint against P.T. Bank Negara Indonesia (Persero) Tbk

Dear Mr. Sansone,

I would like to refer to your letter dated 3 May 2019 addressed to our attorney, Mr. Januzzi as well as letter dated 24 April 2019 from law offices of Orlee Goldfeld, attorneys of BNI in six pages.

The above six page letter is nothing but indeed hiding the criminal acts of BNI, whom this lady is actually representing. She has not brought to your attention that indeed on 6 December 2011 BNI fraudulently sent an email to JP Morgan Chase Bank in New York claiming that their customer, PT Galamata, has rejected our shipping documents although only during last year when I was in Jakarta I found that on 5 December 2011 our shipping documents were duly endorsed by BNI Samarang branch, provided to their customer, PT Galamata, enabling them to release our manufactured parts, delivering to Indonesian Power making sure that Indonesian Power will pay $730,000. amount which PT Galamata had charged Indonesian Power based on contract.

During my stay I found out that indeed for the establishment of $411,600. letter of credit, BNI Semarang branch had loaned to their customer, PT Galamata, the amount of four billion rupiah which is equal to about $411,600. I found as well that there was a contract between PT Galamata and BNI Semarang that latest 120 days from the date of establishment of letter of credit, such amount must be paid by PT Galamata to BNI Semarang branch. For this reason there was another agreement between Indonesian Power (ultimate end user of our parts) and BNI Semarang that the amount due to PT Galamata should be paid directly to BNI Semarang branch.

The lady in charge representing the bank has concealed or eventually did not know the above material facts. In order to show additional criminal acts of BNI, I kindly request you to know that indeed after our goods were released from the customs, were shipped to Indonesian Power, BNI Semarang has requested their customer, PT Galamta, to return our original airway bill in sending the same to JP Morgan Chase thus claiming that PT Galamata has rejected our shipping documents. In fact BNI has tried twice to lie and defraud not only our company but indeed JP Morgan Chase Bank.

We are a very proud NY manufacturing company since 1974. For similar misconduct your organization has penalized Societe Generale by 420 million dollars as fines, Standard Chartered Bank with 40 million dollars, Bank Mashraq with 40 million dollars as fines. In our opinion BNI as one of the largest banks in South East Asia must be fined for their criminal acts as decided by you and New York Department of Financial Services of New York so that from now on no foreign bank shall try to defraud any American organization. The criminal act of BNI has made sure that our company is practically out of business simply because we could not pay about $300,000. real estate taxes which we owed Town of Oyster Bay in New York.

Our minimum loss on this transaction is $411,600. which should have been paid to us in December 2011 plus respective interest until the amount is fully paid including but not limited to $900,000. which we were obliged to sell our property known as 150 Express Street, Plainview, NY 11803 on haste. It should be understood that there is no

statute of limitation in this transaction because I found the fraud committed to our company only during 2018 when I was in Jakarta in February as well as November 2018.

Moreover Ms. Orlee Goldfeld should never claim that BNI being a quasi-governmental organization has ever the right to cheat and defraud a NY corporation and lie to JP Morgan Chase, the largest bank in United States.

Please note that I talked with Mr. Kelly of your office in Garden City, he does agree with me that BNI must pay all the amount due and must be fined as outlined by your esteemed organization. We are sending a copy of this letter to law offices of Orlee Goldfeld so that from now on such office will be forthcoming, disclosing all the material facts as they are.

Please allow undersigned to meet you at your earliest convenience once you receive this letter covering respective documents.

Respectfully submitted,

Pierre Lavi
General Managing Partner
Turbo Dynamics Corporation

*Att: Letter dated 25 April 2018 from Law offices of Karl Brodzansky to Mr. Jerry Phillips, Esq.,*
*Email dated Dec. 6, 2011 from bank Negara Indonesia to JP Morgan Chase,*
*Air Waybill no. JFK-3115-8407 3101158407 dated 15 November 2011, shipment of parts to Bank Negara Indonesia, Semarang Branch which was endorsed by two officers by the bank, namely Dyah Hesti Andaninvd and Juma Indka, delivered to the order of PT Galamata Semarang*

*cc: Law offices of Orlee Goldfeld*
*171 East Ridgewood Ave. Suite 201*
*Ridgewood, NJ 07450*

P. LAVI
10 AUSEREHL Court
Huntington NY 11743



U.S. POSTAGE PAID
FCM LG ENV
HUNTINGTON, NY
11743
JUL 11, 22
AMOUNT
**$9.65**
R2305K134846-08

1000    10007



CERTIFIED MAIL®

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7021 1970 0002 2346 0260

United state DISTRict Court
Southern DISTRict Court of NY

500 Peale St
NY New york    10007



Pro se
AF

RECEIVED
JUL 13 2022
CLERK'S OFFICE
S.D.N.Y.

RECEIVED
SDNY PRO SE OFFICE
2022 JUL 14 AM 10:07

