UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

PIERRE LAVI,

Plaintiff,

-against-

BANK NEGARA INDONESIA,

Defendant.

-------------------------------------------------------X

22-cv-6000 (VSB)

**OPINION & ORDER**

Appearances:

Pierre Lavi,
10 Auserehl Court
Huntington, NY 11743
*Pro Se.*

Orlee Goldfeld
Hollyer Brady LLP
New York, NY
*Counsels for Defendants*

VERNON S. BRODERICK, United States District Judge:

Plaintiff Pierre Lavi ("Plaintiff"), who is proceeding pro se, brings this action on behalf of himself against Bank Negara Indonesia Branch ("BNI"). Currently before me is the motion to dismiss of BNI. Because I do not have jurisdiction, and, even if I had jurisdiction, Plaintiff's complaint fails to state a cause of action, BNI's motion to dismiss is GRANTED.

## I. FACTUAL BACKGROUND

On July 14, 2022, pro se Plaintiff filed his complaint against Defendant on behalf of himself and his corporation, Turbo Dynamics Corporation, ("Complaint"). (Doc. 1.) Plaintiff

asserts various unspecified claims against BNI and seeks money damages.[1]

In the Complaint, Plaintiff alleges that BNI "through JP Morgan Chase Band opened a confirmed LC of credit in favor of our company amounting to $411600." (Doc. 1.) He states that "as per attached document and airway bill dated 11/15/2011 all shipment was shipped to Jakarta Indonesia." (*Id.*) On December 6, 2011, BNI allegedly sent an email to J.P. Morgan Chase Bank, stating that the goods had been refused by the buyer due to "discrepancies and late presentation." (*Id.*) Due to this, Plaintiff was not paid for this shipment. (*Id.*)

Plaintiff purportedly went to Jakarta to meet BNI "agents", paid $2,000 to an attorney in Jakarta, and met nine BNI officers, none of whom would give Plaintiff their name. (*Id.* 2.) These officers included "a lady who claimed to be bank attorney." (*Id.*) Plaintiff claims that during his stay in Jakarta

> . . . I found out that their client had borrowed four billion rupiah to open LKC client had committed to pay back such amount expiry of LC which was extended till March 2012, I found out vthat there was agreement between BNI and client that after crelese of our parts client my immediately ship our parts to IP (International Power) who was obligated to pay all amounts due to BNI ,for this reason BNI sent their email dated 6th December 2011, BNI second largest bank defrauded the largest bank in USA being Chase Bank based on n information I have received . . .

(*Id.*)[2]

In support of his claim, Plaintiff attaches several documents to his Complaint, including: (1) a letter dated January 4, 2019, from BNI; (2) an invoice on Turbo Dynamic Corporation letterhead dated November 15, 2011; (3) a guarantee letter by Turbo Dynamic Corporation dated November 15, 2011; (4) a letter to the New York Department of Financial Services on Turbo Dynamic Corporation letterhead dated July 5, 2019; (6) a letter to the President of BNI on Turbo

[1] Plaintiff ostensibly raises claims of fraud and grand larceny allegedly committed against J.P. Morgan. As I explain below, Plaintiff does not have standing to bring these claims.

[2] I refer to the page numbers given to the Complaint by the ECF system.

Dynamic Corporation letterhead dated December 2, 2018; (7) a notice from BNI stating that "the docs" were refused due to discrepancies noted dated December 6, 2011; (8) a SWIFT message report from BNI received on January 25, 2012; (9) an Air Waybill dated November 10, 2012; (10) a letter from the Department of Financial Services to Plaintiff dated August 7, 2019; (11) a letter from the Law Offices of Orlee Goldfeld to Plaintiff dated April 23, 2019; (12) a letter from the Law Offices of Karl Brodzansky dated April 30, 2018; and (13) a letter to John Sansone of the New York Department of Financial Services, dated July 5, 2019. In subsequent filings, Plaintiff attaches a notice of approval from the Town of Huntington Assessor's Office of Plaintiff's application for a partial senior citizen property tax exemption, utility bills, electrical bills, and a final termination notice of electricity.[3]

## II. PROCEDURAL BACKGROUND

On July 14, 2022, Plaintiff filed his Complaint against BNI. (Doc.1.) On August 15, 2022, Plaintiff filled an application to proceed *in forma paupris*. (Doc. 3.) His application was granted on August 22, 2022. (Doc. 4.) On September 20, 2022, I *sua sponte* dismissed all claims filed on behalf of Turbo Dynamics Corporation on the basis that a pro se litigant cannot appear on behalf of a corporation. (Doc. 6.)

On October 11, 2022, I received a letter from Orlee Goldfeld ("Goldfeld"), stating that she had received a letter from Plaintiff in relation to this case. (Doc. 9.) In her letter, Goldfeld clarified that she had not been retained to represent BNI, and that service upon her did not constitute proper service on the bank. (*Id.*) On October 14, 2022, I ordered Plaintiff to show cause at a telephonic hearing as to why Goldfeld should not be removed from the case. (Doc. 11.) I held a show cause hearing on October 28, 2022. (Doc. 12.) During the hearing, Goldfeld

[3] It is unclear why Plaintiff has submitted these documents to me or how they might be related to this case.

represented that she had represented BNI in the past on other legal matters, but had not been retained to represent BNI in this case. (*Id.*) I ruled that Goldfeld did not represent BNI, and that BNI had not been properly served. (*Id.*)

On November 30, 2022, I warned Plaintiff that an affidavit of service had not been filed on the docket, and that service was overdue.[4] (Doc. 14.) On December 27, 2022, BNI filed a motion to dismiss. (Doc.17.) Plaintiff filed a letter in response on January 6, 2023. (Doc. 20.) On January 10, 2023, Defendant filed a reply memorandum of law in support of its motion to dismiss. (Doc. 21.)

## III. <u>Legal Standards</u>

### A. *Pro se Pleadings*

Pro se pleadings are to be construed liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpreted to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks). However, the "special solicitude" offered to pro se litigants, *id*. at 475 (citation omitted), has limits. To state a claim, pro se pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make "a short and plain statement" showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court must dismiss a complaint where a litigant is proceeding *in forma pauperis*, or any portion of such a complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co*., 141 F.3d

[4] As of the filing of this Opinion & Order, no affidavit of service has been filed on the docket. In Defendant's motion to dismiss, it states that service was made on November 8, 2022, but note that Plaintiff did not file proof of service as required by Rule 4(l), and aver that service of process was improper as it did not comply with the Foreign Sovereign Immunities Act ("FSIA"). (Doc. 19 at 7.)

434, 437 (2d Cir. 1998) ("§ 1915(e) . . . mandated that a district court shall dismiss the case if the court determines that the action is frivolous or malicious.") (internal quotation marks omitted). Complaints that fails to establish subject matter jurisdiction must also be dismissed. *See* Fed. R. Civ. P. 12(h)(3).

**B. *Rule 8 of the Federal Rules of Civil Procedure***

Rule 8 requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, "[e]ach averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). These requirements are designed to compel a plaintiff to identify the relevant circumstances which he claims entitle him to relief in such a manner that the defendant is provided with fair notice of the claim and the ability to investigate. *Celli v. New York City Dep't of Educ.*, No. 15-CV-3679 (BMC)(LB), 2016 WL 10567948, at *2 (E.D.N.Y. Dec. 24, 2016), *aff'd sub nom. Celli v. Cole*, 699 F. App'x 88 (2d Cir. 2017); *see also Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Dismissal under Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Shomo v. New York*, 374 F. App'x 180, 182 (2d Cir. 2010) (*quoting Salahuddin*, 861 F.2d at 42). "[C]omplaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with [Rule 8] and must be dismissed." *Celli*, 2016 WL 10567948, at *2 (quoting *Coon v. Benson*, No. 09 Civ. 230, 2010 WL 769226, at *3 (S.D.N.Y. March 8, 2010)) (alterations in original); *see also Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) ("[T]he complaint contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension.") Even with the special solicitude showed to pro se plaintiffs, a complaint filed pro se that does not meet the

permissive standards of Rule 8 set forth above will be dismissed. *See, e.g.*, *Paul v. Bailey*, No. 09 Civ. 5784, 2010 WL 3292673, at *4 (S.D.N.Y. July 21, 2010).

### C. *Rule 12(b)(6)*

Rule 12(b)(6) requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570. A claim is facially plausible if the plaintiff pleads enough factual detail to allow the court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In evaluating a complaint, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences" in a plaintiff's favor. *Cruz v. Gomez,* 202 F.3d 593, 596 (2d Cir. 2000). "This rule applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted).

## IV. DISCUSSION

### A. *Jurisdiction to Hear This Case*

A bank that is owned by a foreign government is considered a "foreign state" for the purposes of the Foreign Sovereign Immunity Act ("FSIA"). *Hanil Bank v. PT. Bank Negara Indonesia (Persero)*, 148 F.3d 127, 130 (2d Cir. 1998). The FSIA "provides the sole basis for obtaining jurisdiction over a foreign sovereign in the United States." *Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 106 (2d Cir. 2016) (internal quotation marks omitted). A "foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception [in the FSIA] applies, a federal court lacks subject-matter

jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *see also* 28 U.S.C. § 1604 ("[A] foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided" for in the FSIA). One such exception is the commercial-activity exception. This exception, which contains three independent clauses, provides that a foreign state is not immune from jurisdiction "in any case" where:

> the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

An entity is "an 'agency or instrumentality of a foreign state'" when, in relevant part, it is a "separate legal person," 28 U.S.C. § 1603(b)(1), and "a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof," 28 U.S.C. § 1603(b)(2). BNI is thus an agency or instrumentality of the Republic of Indonesia because it is majority-owed by that state.[5] Thus, I may only exercise subject matter jurisdiction over BNI if an exception in the FSIA applies. Although Plaintiff does not raise any exceptions in his briefing, I analyze whether the commercial-activity exception, the only potentially viable exception, applies to here.

There is no evidence that there was any act committed by BNI that would satisfy any of the three clauses in the statute. Plaintiff cannot qualify under the first or second clauses of § 1605(a)(2) because the commercial activity was not "carried on in the United States by the

---

[5] As of the filing of the Complaint, the Government of the Republic of Indonesia owns 60 percent of BNI shares, while the public owns the remaining 40 percent. *See History*, BNI https://www.bni.co.id/en-us/company/about-bni/history.

foreign state" nor was the action based "upon an act performed in the United States in connection with a commercial activity of the foreign state". 28 U.S.C. § 1605(a)(2). After problems arose with the shipment of goods to Jakarta, Indonesia, Plaintiff was asked to go to Jakarta to "meet[] their head office". (Doc. 1 at 1.) Plaintiff travelled to Jakarta to meet BNI agents in their head office, paid local Indonesian counsel $2000, and met nine officers of BNI at the Jakarta head office. (*Id.* 2.) None of these facts suggest that BNI carried out commercial activity in the United States, or performed acts in the United States in connection with commercial activity of the foreign state. Indeed, the facts in this case suggest the very opposite. After the dispute emerged, Plaintiff travelled to Jakarta to meet with BNI's head office, spoke to BNI agents and officers in Jakarta, and retained local counsel in Indonesia to help resolve the dispute. (*Id.* 2.) Plaintiff pleads no facts to suggest that any commercial activity was carried on in the United States by BNI, or that any acts were performed in the United States in connection with commercial activity of BNI.

This leaves the third clause of § 1605(a)(2). In order to satisfy this clause, Plaintiff would need to prove that the commercial activity of the foreign state caused injury, such as financial loss, with a "direct effect" felt in the United States. Plaintiff alleges that he is owed payment from a letter of credit that was opened by BNI's Semarang Branch in Indonesia in June 2011. (Doc. 1 at 2.) The issuance of a letter of credit by a foreign state-owned bank in Indonesia designating payment to a bank account in the United States and the subsequent failure to honor that letter of credit is commercial activity can create a "direct effect" within the United States for the purposes of § 1605(a)(2). *Hanil Bank*, 148 F.3d at 132 (finding that BNI's failure to honor a letter of credit issued in Indonesia that designated payment to a bank account in New York constituted a "direct effect" in the United States under the FSIA). However, Plaintiff does not

adequately plead that the act "cause[d] a direct effect in the United States." 28 US.C. § 1605(a)(2). "Mere financial loss" suffered by an individual in the United States is not sufficient to constitute a direct effect under § 1605(a)(2). *Morris v. People's Republic of China*, 478 F. Supp. 2d 561, 570 (S.D.N.Y. 2007) (internal quotation marks omitted).

Alternatively, courts have found that a "direct effect" on the United States can be found if performance of the contract could have been required in the United States and then was requested in the United States. *Virtual Countries, Inc. v. Republic of S. Afr*., 300 F.3d 230, 239 (2d Cir. 2002). Courts often look to "the place where legally significant acts giving rise to the claim occurred" in determining what place a direct effect is said to have occurred. *Adler v. Fed. Republic of Nigeria*, 107 F.3d 720, 727 (9th Cir. 1997) (internal quotation marks omitted).

Plaintiff has not specifically identified a contract that could satisfy this jurisdictional element. Assuming the contract at issue is the letter of credit, I must rely on the Complaint's allegations since neither party has provided a copy of it. The Complaint contains no allegations or indication that the contract had designated accounts in New York as the place of payment, or, for that matter, that any place in the United States was the place of performance for the contractual obligations. *Cf., Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 619 (1992) (finding that Argentina's rescheduling of maturity dates on the bonds had a "direct effect" in the United States because Argentina had designated New York accounts as the place of payment, and New York was the place of performance for Argentina's ultimate contractual obligations). The Complaint also does not allege or contain facts from which an inference can be drawn that Plaintiff—as opposed to his company—was a signatory to the letter or credit or a beneficiary of the letter of credit.

The allegations in the Complaint suggest that all the "legally significant acts" giving rise

to the claims occurred in Indonesia and outside of the United States. *See Adler*, 107 F.3d at 727. Plaintiff's first attempt to resolve the dispute involved him flying to Indonesia, retaining counsel in Indonesia, and meeting with Indonesian bank representatives in BNI's Jakarta branch. (Doc. 1 at 2–3). There is no suggestion that the contract involved American banks, that American banks were the intended depository of funds involved in the transaction, or that the United States was or could have been the place of performance for the contractual obligations. On the facts presented, I am unable to conclude that there is a sufficiently "direct effect" from the foreign state on the United States for me to exercise jurisdiction over this claim. Thus, I lack subject matter jurisdiction over this action, and must dismiss the Complaint.

**B. *Plaintiff's Claims are Time Barred***

The law of the forum state determines whether a plaintiff's claim is time barred when a claim is brought under the FSIA. *Morris*, 478 F. Supp. 2d at 571. A federal court sitting in New York will apply New York's "borrowing statute," N.Y.C.P.L.R. § 202, to determine what statute of limitations to apply. *See Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*, 79 F. Supp. 2d 374, 388–89 (S.D.N.Y. 2000). Under New York State's statutes of limitations, Plaintiff's breach of contract claim is time barred. N.Y.C.P.L.R. § 213(2) provides that a cause of action upon a contract must be commenced within six years, and a cause of action for breach of contract "ordinarily accrues and the limitations period begins to run upon breach." *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007). Here, the Complaint alleges that the letter of credit was not honored in December 2011. (Doc. 1 at 1.) Therefore, any breach of the letter of credit accrued in December 2011. *Guilbert*, 480 F.3d at 149. Plaintiff did not commence this litigation until 11 years after, in July 2022. Thus, this claim is time barred, and must be dismissed with prejudice.

**C. *Failure to State a Claim***

Even if I had jurisdiction over this case, Plaintiff's Complaint does not satisfy federal pleading rules. Accepting all factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, *Cruz*, 202 F.3d at 596, the Complaint still fails to allege any specific violations of Plaintiff's rights by Defendant, or facts that would support an inference that his rights were violated.[6] Plaintiff essentially asserts that Defendants unlawfully harmed him and his company, Turbo Dynamics Corporation, but the Complaint contains virtually no facts about what occurred, or why Plaintiff is entitled to relief. Plaintiff merely states that he seeks $ 411,600 plus interest, stemming from a letter of credit BNI issued in 2011 that was not paid due to the goods shipped by Turbo Dynamics Corporation being rejected by the receiver for "discrepancies and late presentation." (Doc. 1 at 1.) From the Complaint, it is not completely clear what cause of action Plaintiff is alleging against BNI. He does not provide further information regarding the relationship between himself and BNI, provide information regarding any course of business with BNI, or state that there was a contract between himself and BNI. Although I must draw the most favorable inferences that a pro se complaint supports on a motion to dismiss for failure to state a claim, I may not "invent factual allegations that the he has not pled." *See Chavis*, 618 F.3d at 170. Plaintiff has not sufficiently pled facts to allow me to reasonably infer that the

[6] Plaintiff asserts claims on behalf of himself and his corporation, Turbo Dynamics Corporation. As nonlawyers cannot bring suit on behalf of another entity, he cannot represent his corporation. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008). For this reason, Turbo Dynamics Corporation was dismissed from the case as a plaintiff on September 20, 2022. (Doc. 6.) Further, Plaintiff raises claims of fraud and grand larceny committed against J.P. Morgan. (Doc. 1.) Plaintiff does not have standing to bring claims on behalf of J.P. Morgan because he is not a representative of J.P. Morgan and a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Further, Plaintiff does not have standing to bring criminal charges against Bank Negara since he is not an official of or representative of the State of New York. *Leeke v. Timmerman*, 454 U.S. 83, 86 (1981) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.") (internal quotation marks omitted).

Defendant is liable to him. *Iqbal,* 556 U.S. at 678. Therefore, even if I had jurisdiction, I would also dismiss this Complaint for failure to state a claim on which relief may be granted.

## V. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED, and Plaintiff's Complaint is dismissed with prejudice.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to terminate all open motions and terminate the case.

SO ORDERED.

Dated: August 7, 2023
New York, New York

Vernon S. Broderick
United States District Judge